THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA
NEW ORLEANS DIVISION

| | |
|---|---|
| **KENNETH M. MIMMS** | **CIVIL ACTION NO.** |
| **VERSUS** | **JUDGE** |
| **MORIAL CONVENTION CENTER NEW ORLEANS** | **MAGISTRATE** |

## COMPLAINT

**NOW INTO COURT,** through undersigned counsel, comes Plaintiff, Kenneth M. Mimms, who is a person of full majority, domiciled in the State of Louisiana, and who resides in a Parish within this Judicial District, who respectfully represents the following:

## NATURE OF THE ACTION

This is an action bought under Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991, to correct unlawful practices on the basis of racial discrimination. The Plaintiff, Kenneth M. Mimms, the Defendant's Building Trades Manager, was subjected to race discrimination because of his race, Black, by Art Shilling, Assistant Director of Operation. As alleged with greater particularity in paragraph 11, Plaintiff was subjected to having his yearly evaluation lowered without explanation; having false accusations made against him by Art Shilling; and being wrongfully discharged by Shilling on February 16, 2018, due to a failed inspection; despite not disciplining and/or firing two white managers whose areas of operation also failed the same inspection.

1

## JURISDICTION AND VENUE

1. This Court has subject matter jurisdiction pursuant to 28 U.S. C. sec. 1332. The amount in controversy exceeds $75,000.00 exclusive of interest and costs.

2. This action is authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, as amended, and Title I of the Civil Rights Act of 1991.

3. The employment practices alleged to be unlawful were at all times committed in the United States District Court for the Eastern District of Louisiana.

## PARTIES

4. Kenneth M. Mimms, is a resident of Orleans Parish, Louisiana.

5. At all relevant times, Defendant has been a quasi-public entity which operates an event facility, domiciled in Orleans Parish, and doing business in the State of Louisiana.

6. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce within the meaning of Section 701(b), (g) and (h) of Title VII, 42 U.S.C. Sections 2000-e-(b), (g) and (h).

7. At all relevant times, all material facts occurred within the jurisdiction of this Court.

## STATEMENT OF CLAIMS

8. More than thirty days prior to the institution of this lawsuit, Kenneth M. Mimms filed a charge of discrimination with the Equal Employment Opportunities Commission (hereinafter referred to as EEOC), Charge Number 461-2018-01864, alleging he had

been discriminated against because of his race, Black, by the Assistant Director of Operations, Art Shilling.

9. A Right to Sue was issued by EEOC on October 24, 2018 and received by the Plaintiff on or about October 26, 2018.

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

11. Kenneth M. Mimms began his employment with the Defendant in 2003 as a carpenter. In 2006, Plaintiff was promoted to Maintenance Coordinator; and in 2009 he was promoted to Building Trades Manager, a position which he held until his wrongful termination on February 16, 2018, by Art Shilling, Assistant Director of Operations.

Art Shilling was hired by the Defendant in February of 2016 as the Assistant Director of Operations. From the beginning of Shilling's employment with the Defendant, it became abundantly clear that Mr. Shilling did not want Mr. Mimms in his position, and he had frequent issues with other minorities in the workforce.

A few months after Shilling's arrival, an incident occurred between Plaintiff and Mr. Shilling which was caused by a faulty sprinkler system which was not being inspected. Shilling accused Plaintiff of being responsible for the situation, despite the fact that there had been problems with the system for years prior to Plaintiff's employment with the Defendant. Complete inspections of the system had not been possible for years due to an access problem that the Defendant tried to explain to Shilling. One of the issues for the facility's sprinkler system was lack of adequate funding to correct the problems.

Following the sprinkler system incident, Shilling went to the Defendant's H.R. Department in an effort to have Plaintiff terminated, alleging that Plaintiff had not had the fire pumps inspected for a period of three years. The matter was resolved in favor of the Plaintiff, after the Director of Operations requested the reports for the three year period, and then verified to Shilling that the inspections had been done properly at the request of Plaintiff.

Later in 2016, Shilling created a new software system to track work orders, and he constantly took issue with Plaintiff, berating and accusing him of not properly using the system. Despite Shilling's complaints to Plaintiff about his usage of the software system, Plaintiff never had to correct and/or make any adjustments to the work orders he issued through the new system.

In March of 2017, Shilling complained to Plaintiff that he was not properly overseeing and/or enforcing the provisions of a contract with one of the sub-contractors who was responsible for the maintenance of the elevators and escalators. Plaintiff informed Shilling that he had not been privy to the contract; he had not been a part of the negotiations for the contract; and, he had never seen any of the contract provisions. Shilling gave Mimms a copy of the contract, and then he surreptitiously went into Plaintiff's office and removed the contract without Plaintiff's knowledge. The office manager had observed Shilling when he was in Plaintiff's office, searching through papers on Plaintiff's desk and informed Plaintiff of Shillings' actions. Plaintiff complained to the Director of Operations about Shilling rummaging through his desk, and Shilling admitted to the Director of Operations that he had taken the contract out of Plaintiff's office. Shilling's removal of the contract from Plaintiff's desk occurred prior to

a scheduled meeting with the sub-contractor to discuss the issues with the elevators and escalators, which demonstrated Shilling's attempt to sabotage Plaintiff from being prepared for the meeting. Plaintiff reported the incident to HR and the Vice President of Operations, but no actions were taken against Shilling.

Sometime in June of 2017, damages occurred to the escalator stairs, an investigation was conducted and two employees were written up following the investigation. Prior to the completion of the investigation, Shilling accused Plaintiff of being responsible for the damages; and then, Shilling accused Plaintiff of trying to cover up for the employees who were ultimately found to be responsible for the damages; and finally, Shilling asked HR to terminate Plaintiff because of the damages. After conducting his own investigation, the Vice President of Operations overruled Shilling and confirmed Plaintiff's version of events.

From the beginning of Plaintiff's employment with the Defendant, through 2016, all of his yearly evaluations reflected that he had exceeded expectations in most of the listed categories, and he was given merit increases based on his performance, even in his last two years of evaluations under Shilling. At no time, did Plaintiff receive any verbal or written warnings about his job performance, nor was he ever suspended for any workplace infraction. The Defendant's Employee Handbook shows a progressive discipline policy that requires verbal and written warnings prior to any suspensions.

The final incident between Shilling and Mimms began late in 2017, following a "safety walk- through" by an independent safety team for the purpose of securing an educational grant for the Defendant's facility. The "safety walk- through" resulted with the failure of three different areas in the facility; the kitchen area, managed by Kris

5

Maleig (White); the fire alarm system, managed by Mike Chapman (White); and the sprinkler system, managed by Mimms. When the "walk-through" was conducted, Mimms was the only manager excluded from participating in the "walk-through". Both Maleig and Chapman participated in the "walk-through". Due to the facility failing in those three areas, the grant was denied.

During Mimms two years under Shilling's direct supervision, he became aware of various incidents between Shilling and various minority employees in the workforce.

On February 16, 2018, following the release of the "safety walk-through" report, Shilling terminated Mimms. The two white managers, Maleig and Chapman were not disciplined in any way for the failure of their departments to pass the "safety walk-through".

12. The effect of the practices complained of in paragraph 11 have been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his status as an employee, ruin his reputation in the community and workforce, and deny him future employment opportunities, all because of Defendant's Assistant Director's racial animus towards minorities in general; as well as Plaintiff and other Black employees.

13. The unlawful practices complained of in paragraph 11 above were intentional.

14. The unlawful practices complained of in paragraph 11 above were done with malice or reckless indifference to the federally protected rights of Mr. Mimms.

15. The unlawful practices complained of herein have caused Mr. Mimms to suffer economic injuries, including, but not limited to lost wages, as well as pecuniary and non-pecuniary injuries.

16. The unlawful practices complained of herein have caused Mr. Mimms emotional damages, loss of self-esteem, and irreparable damage to his professional reputation.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff, Kenneth M. Mimms, requests that this Court:

A. Grant a permanent injunction enjoining Defendant Employer, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in employment practices which violate Title VII of the Civil Rights Act of 1964, as amended, when they discriminated on the basis of race against the Plaintiff.

B. Order Defendant Employer, its officers, successors, assigns, to institute and carry out policies, practices, and programs which provide equal employment opportunities for qualified individuals, and which eradicate the effects of its past and present unlawful practices.

C. Order Defendant Employer, its officers, successors, assigns to make whole, Plaintiff, Kenneth M. Mimms, by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described in paragraph 11.

E. Order Defendant Employer, its officers, successors, assigns, to make whole, Plaintiff, Kenneth M. Mimms, by providing compensation for past and future non-

pecuniary losses resulting from the unlawful practices complained of in paragraph 11, including, but not limited to, emotional pain and suffering, inconveniences, loss of enjoyment of life, lowered self-esteem and humiliation, in amounts to be determined at trial.

    F. Grant such further relief as the Court deems necessary and proper under the circumstances.

    G. Award Plaintiff its costs of this action.

Respectfully submitted,

*/s/ Lillian M. Thornton*

Lillian M. Thornton LSB#25525
48 Heritage Lane
New Orleans, LA 70114
(504) 486-7700

**PLEASE SERVE:**

Sarah V. Myers
Chaffe McCall, LLP
2300 Energy Centre
1100 Poydras Street
New Orleans, LA 70163